# United States Court of Appeals
### FOR THE DISTRICT OF COLUMBIA CIRCUIT

——————

Argued March 20, 2018         Decided August 7, 2018

No. 17-5067

MOATH HAMZA AHMED AL-ALWI,
APPELLANT

v.

DONALD J. TRUMP, PRESIDENT, ET AL.,
APPELLEES

——————

Appeal from the United States District Court
for the District of Columbia
(No. 1:15-cv-00681)

——————

*Ramzi Kassem* argued the cause for the appellant.  *John J. Connolly* and *Beth D. Jacob* were with him on the briefs.

*Jennifer R. Cowan* was on brief for the *amicus curiae* Experts on International Law and Foreign Relations Law in support of initial hearing En Banc.

*Sonia M. Carson*, Attorney, United States Department of Justice, argued the cause for the appellees.  *Douglas N. Letter, Matthew M. Collette* and *Sonia K. McNeil*, Attorneys, were on brief.  *Sharon Swingle*, Attorney, entered an appearance.

Before: GARLAND, *Chief Judge*, and HENDERSON and GRIFFITH, *Circuit Judges*.

2

Opinion for the Court filed by *Circuit Judge* HENDERSON.

KAREN LeCRAFT HENDERSON, *Circuit Judge*: Moath Hamza Ahmed Al-Alwi, a detainee at the United States Naval Base at Guantanamo Bay, Cuba, petitioned for a writ of habeas corpus. The district court denied the petition. On appeal, Al-Alwi argues that the conflict resulting in his detention is so unprecedented that the United States' authority to detain him has unraveled. He also argues in the alternative that the conflict has ended, thereby terminating the United States' authority to detain him. Finally, he advances due process claims and a request for further fact-finding. For the following reasons, we affirm the judgment of the district court denying Al-Alwi's petition.

## I.  Background

Shortly after the terrorist attacks of September 11, 2001, the Congress authorized the President to

> use all necessary and appropriate force against those nations, organizations, or persons he determines planned, authorized, committed, or aided the terrorist attacks that occurred on September 11, 2001, or harbored such organizations or persons, in order to prevent any future acts of international terrorism against the United States by such nations, organizations or persons.

Authorization for Use of Military Force, Pub. L. No. 107-40, § 2(a), 115 Stat. 224, 224 (Sept. 18, 2001) (AUMF).

Ten years later, the Congress "affirm[ed] that the authority of the President to use all necessary and appropriate force pursuant to" the AUMF "includes the authority" to "detain"

3

persons who "w[ere] a part of or substantially supported al-Qaeda, the Taliban, or associated forces that are engaged in hostilities against the United States." National Defense Authorization Act for Fiscal Year 2012, Pub. L. No. 112-81, § 1021(a), (b)(2), 125 Stat. 1298, 1562 (Dec. 31, 2011). The Congress granted authority to detain such persons "under the law of war without trial until the end of the hostilities authorized by the" AUMF. *Id.* § 1021(c)(1).

Al-Alwi is a Yemeni citizen who grew up in Saudi Arabia. According to the Government and uncontested in this appeal, Al-Alwi stayed in Taliban guesthouses, traveled to a Taliban-linked training camp to learn how to fire rifles and grenade launchers and joined a combat unit led by an al Qaeda official that fought alongside the Taliban. *Al Alwi v. Obama* (*Al Alwi I*), 653 F.3d 11, 13–14 (D.C. Cir. 2011); *see id.* at 20 (noting that Al-Alwi "did not deny" that "majority of the principal facts" Government asserted "were true" (internal quotation omitted)). Al-Alwi was captured in December 2001 and turned over to United States authorities, who detained him at Guantanamo Bay pursuant to the AUMF. Al-Alwi remains at Guantanamo Bay today.

In 2005, Al-Alwi petitioned for a writ of habeas corpus. The district court denied the petition after concluding that the Government's account of Al-Alwi's Taliban-related activities was supported by a preponderance of the evidence, thereby making Al-Alwi an enemy combatant who could lawfully be detained. *Al Alwi v. Bush*, 593 F. Supp. 2d 24, 27–29 (D.D.C. 2008). This Court affirmed. *Al Alwi I*, 653 F.3d at 15–20.

In 2009, the President established an intra-branch process to "review . . . the factual and legal bases for the continued detention of all individuals" held at Guantanamo Bay. Review and Disposition of Individuals Detained At the Guantanamo

4

Bay Naval Base and Closure of Detention Facilities, Exec. Order No. 13,492 § 2(d), 74 Fed. Reg. 4,897, 4,898 (Jan. 22, 2009). As part of the ongoing process, a Periodic Review Board comprised of senior Executive Branch officials must "periodic[ally] review" detentions at Guantanamo Bay to "ensure" that continued military detentions are "justified." *Periodic Review of Individuals Detained at Guantanamo Bay Naval Station Pursuant to the Authorization for Use of Military Force*, Exec. Order No. 13,567, 76 Fed. Reg. 13,277 (Mar. 7, 2011). In October 2015, the Periodic Review Board determined that continued detention of Al-Alwi "remain[ed] necessary to protect against a continuing significant threat to the security of the United States." Joint Appendix (JA) 641.

In 2015, Al-Alwi filed a second petition for a writ of habeas corpus, which is the subject of this appeal. Al-Alwi did not challenge the district court's earlier determination that he remains an enemy combatant. Instead, Al-Alwi alleged that the conflict in Afghanistan that resulted in his detention had ended and therefore the United States "no longer [had] any lawful basis" to detain him. JA 11.

The district court denied the petition. *Al-Alwi v. Trump*, 236 F. Supp. 3d 417 (D.D.C. 2017). This appeal followed.

## II. Analysis

On appeal from denial of a habeas petition, we review the "district court's findings of fact for clear error, its habeas determination *de novo*, and any challenged evidentiary rulings for abuse of discretion." *Barhoumi v. Obama*, 609 F.3d 416, 423 (D.C. Cir. 2010). As stated earlier, the Government's initial authority to detain Al-Alwi as an enemy combatant after his capture has been asked and answered in the affirmative, *Al Alwi I*, 653 F.3d 11, and remains unaffected by this petition and appeal. Instead, Al-Alwi's petition advances two arguments to

5

support his claim that the Government's established detention authority has expired. First, Al-Alwi argues that the United States' authority to detain him has "unraveled" because the conflict in which he participated is a new species of conflict uninformed by the previous law of war. Second, and alternatively, Al-Alwi argues that the conflict has ended. On a separate and final note, Al-Alwi asserts on appeal due process violations and a need for further discovery in district court. We reject all of Al-Alwi's arguments.

## A.   Authority to detain has not unraveled

The Congress's "grant of authority" in the AUMF "for the use of 'necessary and appropriate force,'" the United States Supreme Court has held, authorizes detention of enemy combatants "for the duration of the particular conflict in which they were captured." *Hamdi v. Rumsfeld*, 542 U.S. 507, 518, 521 (2004) (plurality opinion) (quoting AUMF); *accord id.* at 579 (Thomas, J., dissenting) ("The Executive Branch . . . has determined that [petitioner] is an enemy combatant and should be detained. This detention falls squarely within the Federal Government's war powers, and we lack the expertise and capacity to second-guess that decision. As such, petitioners' habeas challenge should fail . . . ."); *see Uthman v. Obama*, 637 F.3d 400, 402 (D.C. Cir. 2011) ("The AUMF . . . authorizes the Executive Branch to detain" enemy combatants "for the duration of hostilities."). And the 2012 National Defense Authorization Act permits "[d]etention under the law of war . . . until the end of the hostilities authorized by the" AUMF. Pub. L. No. 112-81, § 1021(c)(1). Neither of these enactments places limits on the length of detention in an ongoing conflict. Our baseline, then, is that the AUMF remains in force if hostilities between the United States and the Taliban and al Qaeda continue. *See Ali v. Obama*, 736 F.3d 542, 552 (D.C. Cir. 2013) ("[T]he 2001 AUMF does not have a time

6

limit, and the Constitution allows detention of enemy combatants for the duration of hostilities."). Such hostilities continue, as discussed in more detail *infra*. *See, e.g.*, Redacted Declaration of Rear Admiral Andrew L. Lewis ¶¶ 11–12 (Feb. 1, 2016), JA 754–55 ("Fighting [between the Taliban and U.S. forces] has been nearly continuous since February 2015 . . . . From January 2015 to [February 2016], there have been numerous, specific instances of hostile forces, including the Taliban and al-Qaeda, attacking or planning to attack U.S. personnel and facilities in Afghanistan."); United States Air Forces Central Command, 2010–2015 Airpower Statistics (Oct. 31, 2015), JA 579 (indicating United States released 847 weapons during 2015).

Nevertheless, Al-Alwi maintains that traditional law-of-war principles, which the *Hamdi* plurality said grounded its "understanding" of the AUMF's detention authority, 542 U.S. at 521, do not apply to the conflict here because of the conflict's duration, geographic scope and variety of parties involved. The "unprecedented" circumstances of the Afghanistan-based conflict, Al-Alwi argues, "ha[ve] eroded the United States' detention authority under the AUMF." Appellant's Br. 17. But Al-Alwi's cited authorities, *see* Appellant's Br. 16, merely suggest the possibility that the duration of a conflict may affect the Government's detention authority and, in any event, are not controlling. *See Hamdi*, 542 U.S. at 521 (plurality opinion) ("understanding" of detention authority "*may* unravel" if circumstances of conflict "are entirely unlike those" of previous conflicts (emphasis added)); *Boumediene v. Bush*, 553 U.S. 723, 771 (2008) (holding that Constitution applies at Guantanamo Bay and noting, in context of rejecting Government argument that such holding would be unprecedented, conflict resulting in Guantanamo Bay detention "is already among the longest wars in American history"); *Hussain v. Obama*, 134 S. Ct. 1621, 1622 (2014) (statement of

7

Breyer, J., respecting denial of certiorari) (Court has not "considered whether, assuming detention . . . is permissible, either the AUMF or the Constitution limits the duration of detention"). These statements, then, do not provide a "foundation" for Al-Alwi's theory to prevail or persuade. *Al-Bihani v. Obama*, 590 F.3d 866, 875 (D.C. Cir. 2010) (rejecting petitioner's "clean hands" theory he argued undermined Government's authority to detain him in part because "the citation [petitioner] gives to support his theory is not controlling").

Moreover, Al-Alwi has not identified any international law principle affirmatively stating that detention of enemy combatants may *not* continue until the end of active hostilities, even in a long war. Instead, law-of-war principles are open-ended and unqualified on the subject. *See Hamdi*, 542 U.S. at 520 (plurality opinion) (citing Article 118 of the Geneva Convention (III) Relative to the Treatment of Prisoners of War and Article 20 of the Hague Convention (II) on Laws and Customs of War on Land as support for "clearly established principle of the law of war" that detention may continue during "active hostilities"); *accord id.* at 588 (Thomas, J., dissenting) (noting that "the power to detain does not end with the cessation of formal hostilities"). Nor has Al-Alwi advanced an alternative detention rule that should apply at this point. Although he urges that we "must impose a limit" on the Government's statutory authority to continue detaining him, Appellant's Br. 21, he provides no description of a limit and points to no controlling authority setting a possible limit. *Cf. Ali*, 736 F.3d at 552 ("[A]bsent a statute that imposes a time limit or creates a sliding-scale standard that becomes more stringent over time, it is not the Judiciary's proper role to devise a novel detention standard that varies with the length of detention.").

8

Accordingly, we continue to follow *Hamdi*'s interpretation of the AUMF and the National Defense Authorization Act's plain language. Both of those sources authorize detention until the end of hostilities. Although hostilities have been ongoing for a considerable amount of time, they have not ended. As in *Hamdi*, then, "the situation we face" does not support Al-Alwi's theory of unraveling authority because "[a]ctive combat operations against Taliban fighters apparently are ongoing in Afghanistan." 542 U.S. at 521 (plurality opinion). Therefore, we reject Al-Alwi's argument that the United States' authority to detain him has "unraveled."

## B.   Authority to detain has not expired

In the alternative, Al-Alwi argues that the United States' detention authority has expired because the "relevant conflict," *Hamdi*, 542 U.S. at 521 (plurality opinion), in which he was captured and detained has ended. We disagree.

The "termination" of hostilities is "a political act." *Ludecke v. Watkins*, 335 U.S. 160, 168–69 (1948). If the "life of a statute" conferring war powers on the Executive "is defined by the existence of a war, Congress leaves the determination of when a war is concluded to the usual political agencies of the Government." *Id.* at 169 n.13; *see also Al-Bihani*, 590 F.3d at 874 (in absence of Congressional definition of end of war, "we defer to the Executive's opinion on the matter"). "Whether and when it would be open to this Court to find that a war though merely formally kept alive had in fact ended, is a question too fraught with gravity even to be adequately formulated when not compelled." *Ludecke*, 335 U.S. at 169.

The question alluded to in *Ludecke* is not compelled here. The AUMF authorizes detention for the duration of the conflict

9

between the United States and the Taliban and al Qaeda. National Defense Authorization Act, Pub. L. No. 112-81, § 1021(a), (b)(2), (c)(1); *Uthman*, 637 F.3d at 402. We affirmed the district court's earlier determination that Al-Alwi was part of either the Taliban or al Qaeda. *Al Alwi I*, 653 F.3d at 15–20. The Executive Branch represents that armed hostilities between United States forces and those entities persist. *See* Letter from the President to the Speaker of the House of Representatives and the President Pro Tempore of the Senate (June 13, 2016) ("The United States currently remains in an armed conflict against al-Qa'ida, the Taliban, and associated forces, and active hostilities against those groups remain ongoing."), JA 885; Letter from the President to the Speaker of the House of Representatives and the President Pro Tempore of the Senate (June 6, 2017) ("The United States remains in an armed conflict [in Afghanistan], including against the Taliban, and active hostilities remain ongoing."), perma.cc/Q769-DKQY. The record confirms the Executive Branch's representations. *See, e.g.*, Redacted Declaration of Rear Admiral Andrew L. Lewis ¶¶ 11–12 (Feb. 1, 2016), JA 754–55 ("Fighting [between the Taliban and U.S. forces] has been nearly continuous since February 2015. . . . From January 2015 to [February 2016], there have been numerous, specific instances of hostile forces, including the Taliban and al-Qaeda, attacking or planning to attack U.S. personnel and facilities in Afghanistan."); United States Air Forces Central Command, 2010–2015 Airpower Statistics (Oct. 31, 2015), JA 579 (indicating United States released 847 weapons during 2015); Statement of Gen. John F. Campbell (Mar. 4, 2015), JA 124 ("[W]e continue to attack the remnants of al-Qaeda" in Afghanistan). Al-Alwi does not contest the accuracy of this record and his counsel conceded at oral argument that "there is a shooting war in Afghanistan [that] involves U.S. elements." Oral Arg. Tr. 39:19–20.

10

Al-Alwi argues that the nature of the hostilities has changed such that the "particular conflict in which [he was] captured," *Hamdi*, 542 U.S. at 518 (plurality opinion), is not the same conflict that remains ongoing today. Al-Alwi was captured during Operation Enduring Freedom, the U.S. military campaign launched in 2001 to "defeat[] al Qaeda" and remove the Taliban from power in Afghanistan. JA 64. President Obama announced the "end" of Operation Enduring Freedom at the end of 2014. JA 63. President Obama contemporaneously announced the "begin[ning]" of Operation Freedom's Sentinel. JA 63. The new Operation "pursue[d] two missions": to "continue [supporting] Afghan security forces" and to "continue our counterterrorism mission against the remnants of Al-Qaeda." JA 63. The transition from Operation Enduring Freedom to Operation Freedom's Sentinel, Al-Alwi contends, terminated the Government's power under the AUMF to detain him.

We disagree. As indicated above, the AUMF authorizes detention during active hostilities between the United States and the Taliban and al Qaeda. Nothing in the text of the AUMF or the National Defense Authorization Act suggests that a change in the form of hostilities, if hostilities between the relevant entities are ongoing, cuts off AUMF authorization. *Cf. Al-Bihani*, 590 F.3d at 874 (rejecting petitioner's argument that "current hostilities are a different conflict" based on Taliban shift from government to non-government form and noting common sense and laws of war "do not draw such fine distinctions"); *Ali*, 736 F.3d at 552 (acknowledging that "this is a long war with no end in sight" but stating that "war against al Qaeda, the Taliban, and associated forces obviously continues" and detention authority under AUMF has no statutory "time limit"). However characterized, the Executive Branch represents, with ample support from record evidence, that the hostilities described in the AUMF continue. In the

absence of a contrary Congressional command, that controls. *See Ludecke*, 335 U.S. at 168–70 (deferring to political branch determination that "war with Germany" persisted despite fact that Germany had "surrender[ed]" and "Nazi Reich" had "disintegrat[ed]").

Al-Alwi also argues that the United States' entry into a bilateral security agreement (Agreement) with Afghanistan "mark[ed] the end of the original armed conflict" resulting in Al-Alwi's detention "and the commencement of a new one." Appellant's Br. 33. In the Agreement, the United States declared that its "forces shall not conduct combat operations in Afghanistan." Security and Defense Cooperation Agreement, Afg.-U.S., Art. 2 ¶ 1, Sept. 30, 2014. Instead, the United States agreed to "undertake supporting activities" to assist Afghan security. *Id.* at Art. 2 ¶ 2. Al-Alwi contends that the United States' new role as a result of the Agreement changed the "relevant conflict" and therefore the United States Government has been divested of authority to detain him.

But the Agreement does not declare an end to the conflict on which Al-Alwi's detention is based and the beginning of a new one. Although the Agreement indicates that the United States' military operations in Afghanistan have changed, at the same time it "acknowledge[s] that U.S. military operations to defeat al-Qaida and its affiliates may be appropriate in the common fight against terrorism." *Id.* at Art. 2 ¶ 4. The Agreement also contemplates "U.S. military counter-terrorism operations." *Id.* It does not declare an end to the conflict resulting in Al-Alwi's detention and the beginning of a different one.

"If the record establishes that United States troops are still involved in active combat in Afghanistan," detention of "Taliban combatants" is "part of the exercise of 'necessary and

12

appropriate force,' and therefore [is] authorized by the AUMF." *Hamdi*, 542 U.S. at 521 (plurality opinion) (quoting AUMF). The record so manifests here. Although United States troops are involved in combat with a different operation name, they nonetheless remain in active combat with the Taliban and al Qaeda. Accordingly, the "relevant conflict" has not ended. *Id.* The Government's authority to detain Al-Alwi pursuant to the AUMF has not terminated.

### C. Due process challenges and discovery request

Al-Alwi raises three additional arguments on appeal. First, he asserts that his continued detention, even if authorized by the AUMF, violates substantive due process protections. Second, he asserts that procedural due process requires more procedural protections in future proceedings, including a greater evidentiary burden of proof, than he has received so far. Third, he asserts that the district court should have allowed limited discovery on the differences between Operation Enduring Freedom and Operation Freedom's Sentinel.

We do not reach the merits of these arguments, however, because Al-Alwi forfeited them. Neither Al-Alwi's habeas petition nor his opposition to the Government's motion to dismiss mentioned any of these arguments. And Al-Alwi made none of the claims at oral argument in district court. By not asserting these arguments in the district court, Al-Alwi forfeited them and we do not reach them. *See Keepseagle v. Perdue*, 856 F.3d 1039, 1053 (D.C. Cir. 2017) ("issues and legal theories not asserted" in district court "ordinarily will not be heard on appeal" (internal quotation omitted)).

For the foregoing reasons, the judgment of the district court is affirmed.

*So ordered.*