UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

ASADULLAH HAROON GUL,

Petitioner,

v.

JOSEPH R. BIDEN, JR. et al.,

Respondents.

Filed with the Classified
Information Security Officer
CISO
Date 10/19/2021

Case No. 16-cv-01462 (APM)

## MEMORANDUM OPINION

On August 31, 2021, the United States completed the withdrawal of U.S. Armed Forces from Afghanistan. That brought an end to nearly 20 years of continuous U.S. military presence in the country and heralded a major milestone in the War on Terror. With the boots-on-the-ground portion of the United States' conflict in Afghanistan finally at a close, Petitioner Asadullah Haroon Gul, who has been detained since February 2007 for his role in the aftermath of the September 11, 2001 terrorist attacks, contends that he should be immediately released. Gul argues that the United States lacks the authority to detain him because it is no longer engaged in active hostilities in Afghanistan. Respondents oppose. They argue that their detention authority pursuant to the 2001 Authorization for the Use of Military Force is not limited to a ground war in Afghanistan and that hostilities with al Qaeda and its associated forces continue in Afghanistan and elsewhere.

For the reasons that follow, the court denies Gul's motion for immediate release.

### I.

Gul first moved for immediate release in April 2021, when President Biden announced that the United States would withdraw from Afghanistan by September 11, 2021. *See* Pet.'s Mot. for an Order Requiring the Immediate Release of Asadullah Haroon Gul, ECF No. 117, Mem. of Law

in Supp. of Mot. for an Order Requiring the Immediate Release of Asadullah Haroon Gul, ECF No. 117-1 [hereinafter Pet.'s Br.], at 1. Respondents argued that the motion was premature, positing that "[t]he beginning of the withdrawal . . . is not the end of hostilities," and insisting that the threat from al Qaeda had metastasized beyond Afghanistan. Resp'ts' Opp'n to Pet.'s Mot. for an Order Requiring the Immediate Release of Asadullah Haroon Gul, ECF No. 123, at 1. Cognizant that the situation in Afghanistan would rapidly evolve, the court denied Gul's motion on the record without prejudice to renewal when the United States' withdrawal was complete.

On September 8, 2021, just days after U.S. forces fully withdrew from Afghanistan, Gul moved for renewed consideration of his motion. *See* Pet.'s Req. for Renewed Consideration of the Mot. for Immediate Release, ECF No. 130. Respondents again opposed the motion and filed a memorandum and two classified declarations in support of their opposition. Resp'ts' Suppl. Opp'n in Resp. to Pet.'s Req. for Renewed Consideration of the Mot. for Immediate Release, ECF No. 134 [hereinafter Resp'ts' Br.]; Notice of Classified Filing, ECF No. 133.

On October 18, 2021, the court granted Gul's Petition for Habeas Corpus, ECF No. 1, on the ground that the United States lacks authority to continue Gul's detention because he was not a part of or substantial supporter of al Qaeda. The court takes up the present motion for immediate release to conclude these proceedings, and so that Petitioner may raise this issue on a cross appeal.

II.

Respondents' authority to detain Gul derives from the 2001 Authorization for Use of Military Force ("2001 AUMF"). The 2001 AUMF permits the President "to use all necessary and appropriate force against those nations, organizations, or persons he determines planned, authorized, committed, or aided the terrorist attacks that occurred on September 11, 2001, or harbored such organizations or persons." Authorization for Use of Military Force, Pub. L.

2

No. 107-40, § 2(a), 115 Stat. 224 (2001). In the 2012 National Defense Authorization Act ("2012 NDAA"), Congress proclaimed that the President's power under the 2001 AUMF "includes the authority for the Armed Forces of the United States to detain covered persons . . . pending disposition under the law of war." National Defense Authorization Act for Fiscal Year 2012, Pub. L. No. 112-81, § 1021(a), 125 Stat. 1298, 1562. That detention authority expires with "the end of the hostilities authorized by the Authorization for Use of Military Force." *Id.* § 1021(c)(1); *see also Hamdi v. Rumsfeld*, 542 U.S. 507, 520 (2004) ("It is a clearly established principle of the law of war that detention may last no longer than active hostilities."). In order to determine whether the United States can lawfully detain Gul, therefore, the court must determine whether "hostilities" authorized by the 2001 AUMF continue.

Whether active hostilities persist is perhaps one of the weightiest questions a court can take up, and, for that reason, the court must afford the utmost deference to the Executive's position on that question. The "termination" of "[t]he state of war . . . is a political act." *Ludecke v. Watkins*, 335 U.S. 160, 168–69 (1948) (internal quotation marks omitted). "Whether and when it would be open to th[e] [c]ourt[s] to find that a war though merely formally kept alive had in fact ended, is a question too fraught with gravity even to be adequately formulated when not compelled." *Id.* at 169. Accordingly, the court must "defer to the Executive's opinion on the matter" of whether active hostilities exist, "at least in the absence of an authoritative congressional declaration purporting to terminate the war." *Al-Bihani v. Obama*, 590 F.3d 866, 874 (D.C. Cir. 2010). When "the Executive Branch represents, with ample support from record evidence, that the hostilities described in the AUMF continue," and when Congress has not given a "contrary command," the Executive Branch's representation "controls." *Al-Alwi v. Trump*, 901 F.3d 294, 300 (D.C. Cir. 2011).

3

### III.

Gul argues that the United States lacks the authority to detain him because (1) "the war in Afghanistan is over," and (2) "the United States has defeated al Qaeda in Afghanistan and there are no active hostilities." Pet.'s Br. at 7. His motion therefore presents two questions for this court: (1) whether the United States' authority to detain Gul depends on the existence of active hostilities in Afghanistan specifically and (2) whether active hostilities with al Qaeda exist. The court takes each in turn.

### A.

The 2001 AUMF was a sweeping delegation of power that, on its face, contains no geographical limitation. *See* Pub. L. No. 107-40, § 2(a), 115 Stat. at 224. As Respondents point out, that is significant. *See* Resp'ts' Br. at 7. Congress has routinely placed geographic boundaries on its authorizations for the use of military force. In the 2002 Authorization for Use of Military Force in Iraq ("Iraq AUMF"), for example, Congress limited the President's use of force to the "threat posed by Iraq." Authorization for Use of Military Force Against Iraq Resolution of 2002, Pub. L. No. 107-243, § 3(a)(1), 116 Stat. 1498. Earlier, in 1983, Congress limited the President's authority to exercise his war powers in the Lebanon War to "continu[ing] participation by United States Armed Forces in the Multinational Force *in Lebanon*." Joint Resolution, Pub. L. No. 98-119, § 3, 97 Stat. 805 (1983) (emphasis added). In contrast, the 2001 AUMF is not limited by geography, but empowers the President to use force wherever he may find the "nations, organizations, or persons" who "planned, authorized, committed, aided" the September 11 terrorist attacks and those who harbored them. Pub. L. No. 107-40, § 2(a), 115 Stat. at 224. Unlike the Iraq AUMF or the 1983 Joint Resolution, there is simply no statutory hook for Gul's argument that the 2001 AUMF is limited to hostilities in Afghanistan.

Lacking recourse to the statute, Gul takes refuge in the case law. He notes first that in *Hamdi v. Rumsfeld*, the Supreme Court interpreted the 2001 AUMF to authorize detention "for the duration of the *particular conflict* in which" the detainee was captured. 542 U.S. at 518 (emphasis added). That particular conflict, Gul reasons, is "the war in Afghanistan." Pet.'s Br. at 7. He argues that the D.C. Circuit has taken this view in *Al-Bihani v. Obama*. In that case, the D.C. Circuit considered a Guantanamo detainee's challenge that he must be released because "the conflict with the Taliban . . . ended." *Al-Bihani v. Obama*, 590 F.3d 866, 874 (D.C. Cir. 2010). Al-Bihani "offer[ed] the court a choice of numerous event dates—the day Afghans established a post-Taliban interim authority, the day the United States recognized that authority, the day Hamid Karzai was elected President—to mark the official end of the conflict." *Id.* The D.C. Circuit rejected those arguments, likening those moments to mere "successful campaigns" in "a long war." *Id.* In passing, the court explained that it would not fashion its own end date for active hostilities, and "[i]n the absence of a determination of political branches that hostilities in *Afghanistan* have ceased, Al-Bihani's continued detention is justified." *Id.* at 875 (emphasis added).

This court does not read *Al-Bihani* to circumscribe the sweeping authority Congress granted the President in the 2001 AUMF. It is not clear that either party before the D.C. Circuit even presented the court with an argument that the 2001 AUMF or the conflict in which Al-Bihani was detained were limited to Afghanistan. Nor did the D.C. Circuit provide any analysis that would support the proposition that the 2001 AUMF is limited to "hostilities in Afghanistan." And the consequences of this court magnifying the D.C. Circuit's passing reference to "in Afghanistan" to a statement restricting the scope of the Executive's power to wage congressionally authorized war are simply incredible. Gul would have this court read *Al-Bihani* to stand for the proposition that all war-on-terror detainees arrested in Afghanistan are no longer lawfully detained. That the

court cannot do when, as here, its authority is at its nadir, and neither a higher court, Congress, nor the Executive has geographically bound the relevant conflict to Afghanistan. *See Ludecke*, 335 U.S. at 170 ("These are matters of political judgment for which judges have neither technical competence nor official responsibility.").

Likewise, the court does not read *Al-Bihani* to stand for the proposition that the particular conflict in which a detainee is captured is limited to the country in which the detainee was captured. The facts on the ground indicate that this is certainly not true for the United States' conflict with al Qaeda. The end of the United States' ground war in Afghanistan marks the end of just one aspect of the United States' hostilities with al Qaeda. Respondents have indicated that, not only ██████████████████████████████████████████████████ Classified Decl. of Dagvin R.M. Anderson in Supp. of Resp'ts' Opp'n to Pet.'s Req. for Renewed Consideration of Motion for Immediate Release [hereinafter Anderson Decl.] ¶ 42 ██████████ ██████████████████████████████████████████ Such "a change in the form of hostilities" does not negate the Executive's detention authority so long as "hostilities between the relevant *entities* are ongoing." *Al-Alwi*, 901 F.3d at 300 (emphasis added).

Despite its decision, the court shares Gul's concern that Respondents have asked it to endorse what is fast approaching "perpetual detention." *Hamdi*, 542 U.S. at 520. Gul has been detained without charge since February 2007. JE 197, at 1283. Fourteen years is, by any measure, an inordinate amount of time to be held without charge. And the events of the last two decades have demonstrated just how "broad and malleable" the "war on terror" is. *Hamdi*, 542 U.S. at 520.

The Supreme Court's warning in *Hamdi*, given more than thirteen years ago, seems more prescient now than ever: "If the Government does not consider this unconventional war won for two generations, and if it maintains during that time that [the detainee] might, if released, rejoin forces fighting against the United States, then the position it has taken throughout the litigation of this case suggests that [his] detention could last for the rest of his life." *Id.* Respondents' case that Gul might rejoin enemy forces has significantly eroded with the passage of these last fourteen years. That is particularly true because, as the court separately has concluded, Gul's force is at peace and he never was "part of" al Qaeda.

But the court is nonetheless constrained to respect the decision of Congress to grant the Executive a broad power that is not bound by geography and to defer to the Executive's representations that its conflict with al Qaeda is ongoing. In the face of these definitive statements from the political branches, the court cannot conclude that Gul must be immediately released because hostilities have ceased.

### B.

Gul also argues that the United States is no longer in active hostilities with al Qaeda because the United States has declared that it "defeated al Qaeda." Pet.'s Br. at 7. Political rhetoric aside, where "[t]he Executive Branch represents that armed hostilities between United States forces and [the Taliban and al Qaeda] persist" and "[t]he record confirms the Executive Branch's representations," the court must defer to the Executive's determination. *See Al-Alwi*, 901 F.3d at 299.

That is the case here. General Mark Milley testified before the U.S. Senate Armed Services Committee that "Al Qaeda . . . maintains a presence in Afghanistan." Resp'ts' Mot., Ex. 1, ECF No. 134-2, at 90–91. Beyond Afghanistan's borders, "[t]he Al Qaeda threat globally is still there,"

he told the Committee. *Id.* at 93. "Al Qaeda," General Milley explained, "has displaced to . . . other parts of the world," but its affiliates have the capability and "aspirations to . . . attack the United States." *Id.* Respondents' classified submissions back up General Milley's testimony. Major General Davgin R.M. Anderson, the Vice Director of Operations for the Office of the Chairman of the Joint Chiefs of Staff, explains that the United States is still dedicating resources to combatting al Qaeda. He attests that "the United States has deployed forces to conduct counterterrorism operations against Al-Qaeda and associated forces." Anderson Decl. ¶ 7. In light of these deployments, he avers that "U.S. Armed Forces remain engaged in active hostilities with Al-Qaeda and associated forces in a number of different theaters and countries." *Id.* And al Qaeda remains on the offensive against U.S. interests as well. Although al Qaeda's core leadership has declined, ▮▮▮ the Defense Intelligence Agency in the Department of Defense, has attested ▮▮▮. Classified Decl. ▮▮▮ in Supp. of Resp'ts' Opp'n to Pet.'s Req. for Renewed Consideration of Motion for Immediate Release ¶ 5 ▮▮▮, he explains, and they ▮▮▮.

The record accordingly "manifests" that the United States is still engaged in active operations against al Qaeda and its dispersed network of regional affiliates. *Al-Alwi*, 901 F.3d at 300. In light of this evidence, "[t]he Government's authority to detain [Gul] pursuant to the AUMF has not terminated." *Id.*

## IV.

For the foregoing reasons, the court denies Gul's Motion for an Order Requiring Immediate Release, ECF No. 117.

Having resolved this motion and Gul's Petition for Habeas Corpus, the court will issue a separate, final appealable order herewith.

Date: October 18, 2021

Amit P. Mehta
United States District Court Judge